JOHN C. BANTA, ET AL., *v.* CARROLL W. GRIFFITH COMPANY and HARRY KETY, Bailiff.

*(March* 6, 1934.)

LAYTON, C. J., sitting.

*Henry R. Isaacs* for plaintiffs.

*John B. Jester* for defendants.

Superior Court for New Castle County, Action of Replevin, No. 66, January Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

The only question necessary to be determined is whether the contract created the relationship of landlord and tenant between the parties so as to render available to the defendant company the remedy of distress.

Both plaintiffs and defendants cite *Redden v. Barker*, 4 *Harr.* 179, decided in 1844. There the plaintiff sued in assumpsit for use and occupation. The defendant had entered into possession under a contract of purchase with which he failed to comply, and the question was whether he was liable for rent while he occupied. The jury was instructed that the action proceeded on the idea of a contract of renting, either express or implied; that to support the action the relation of landlord and tenant must exist; that if the defendant enters under a contract of purchase, he is not liable for rent, as the character of purchaser excludes that of tenant; except, perhaps, where the defendant enters under a conditional contract of purchase, and there is an express agreement to pay rent in case such purchase should not be carried out, the defendant might be liable on proof of such express agreement. A similar case was *Mariner v. Burton*, 4 *Harr.* 69. The conclusion is ap-

parent that, *a fortiori,* the ruling would have been the same if the question had arisen with respect to the plaintiffs' right to distrain.

Following these cases was the enactment of what is now *Section* 4547, *Revised Code* 1915, which first appeared in the *Code* of 1852. This statute expressly gives a remedy by action of assumpsit for use and occupation against any person entering into possession of land under a contract of purchase which is void, or which has been avoided otherwise than by default of the vendor.

It is not to be supposed that the Legislature intended to do more than to provide a right of action for use and occupation applicable to situations where such right had been denied. The statute did not arbitrarily create a status, that of landlord and tenant, with all the remedies incident to that status, including the summary remedy of distress. So here, while the defendant company, under the statute, might have sued in assumpsit for use and occupation, the availability of the remedy by distress rests upon the same considerations, in part, which governed the Court in *Redden v. Barker;* and, therefore, the language of the contract must be examined to determine whether, upon default by the plaintiffs, it may be construed to be a demise at a certain rent.

The provision of the contract, which is relied upon to establish the relationship of landlord and tenant between the parties, clearly was designed to fix the status of the parties at the time of default. The vendors were concerned lest the vendees, upon default after making some payment or payments, might claim an equitable right or interest in the premises. They were careful to provide that time should be of the essence, which was to enable them to declare a forfeiture in the event of default. *Block v. Smith,* 61 *Ark.* 266, 32 *S. W.* 1070. They were careful to stipulate that all payments made prior to default should

be deemed to be in the nature of liquidation of a rental; that upon default the vendees waived and renounced all rights, and that they should immediately surrender the premises. The contract says nothing as to the status of the parties after default. There is no express agreement creating the relation of landlord and tenant after default, nor can such relationship be reasonably implied as the language used points to a cessation of all rights and an immediate surrender, and the thought of a continuation of relationship of any nature is negatived. Furthermore, even if it be conceded that the contract, after default, by operation of law, has the character of a demise, it is impossible to regard it as a demise at a certain rent, except upon the merest conjecture, for it does not follow that the vendees under a contract of purchase, expecting ultimately to become the owners of the property, would be willing to pay as rent those precise sums which they contracted to pay as a part of the purchase price. As this is the contract of the vendors, it ought not to be construed to give them rights and powers which are not clearly conferred.

Parties to a contract of purchase of real estate under which a vendee is let into possession may, of course, stipulate that, upon default by the vendee, his continued occupation shall be that of a tenant. 16 *R. C. L.* 547; 49 *L. R. A.* 435, *note*. And where this situation exists, there is no reason to deny the vendor any remedy to which a landlord generally is entitled. *Ish v. Morgan,* 48 *Ark.* 413, 3 *S. W.* 440.

But there can be no distress unless there be a contract for an actual demise at a specific sum. *Dunk v. Hunter,* 5 *Barn. & Adol.* 322; 1 *Taylor, Land. & Ten.,* §§ 561, 563; 2 *Tiffany, Land. & Ten.,* § 327d. In the absence of an actual demise summary process is denied. *Dakin v. Allen,* 8 *Cush.* (*Mass.*) 33; *Kiernan v. Linnehan,* 151 *Mass.* 543, 24 *N. E.* 907. And, upon reason and authority, where a

landlord's claim is based solely upon use and occupation and a consequent determination of a reasonable value, the remedy by distress, which is based upon a certain agreed value, is not available to him. *Farrington v. Baley,* 21 *Wend. (N. Y.)* 65.

The mere use of the word "rent" by way of description of the sums to be paid by the purchaser does not necessarily create the relation of landlord and tenant between the parties. 35 *C. J.* 961. *Prather v. Brandon,* 44 *Ind. App.* 45, 88 *N. E.* 700, was concerned with a contract of purchase quite similar to the one under consideration, and it was there held that where the transaction between the parties is in reality and in its legal effect a contract of sale conditional upon the payment of the purchase price in successive installments, it cannot be modified, nor its legal effect avoided by the fact that the installments are called "rent." See, also, *Blitch v. Edwards,* 96 *Ga.* 606, 24 *S. E.* 149; *Quetermous v. Hatfield,* 54 *Ark.* 16, 14 *S. W.* 1096.

Further, it does not appear that the defendant company, by notice or act, after default, elected to treat the contract as terminated and thereafter to treat the plaintiffs as tenants. 16 *R. C. L.* 548; *Ann. Cas.* 1912*A*, 576.

*Patterson v. Stoddard,* 47 *Me.* 355, 74 *Am. Dec.* 490; *Woodbury v. Woodbury,* 47 *N. H.* 11, 90 *Am. Dec.* 555; *Sievers v. Brown,* 34 *Or.* 454, 56 *P.* 171, 45 *L. R. A.* 642; *Dudding v Hill,* 15 *Ill.* 61; *Block v. Smith,* 61 *Ark.* 266, 32 *S. W.* 1070; *Saunders v. Musgrave,* 6 *B. & C.* 524; *Stinson v. Dousman,* 20 *How.* 461, 15 *L. Ed.* 966, cited by the plaintiff, are not in point. These cases have to do either with actions for use and occupation, or with agreements plainly recognizing the existence of a tenancy after default, and in the last mentioned case the remedy by distress was expressly provided for in the contract.

The conclusion must be, therefore, that the agreement in question did not, upon default by the plaintiffs, create the relationship of landlord and tenant so as to give to the defendant corporation the right to distrain for rent alleged to be due. The demurrer is sustained.